UNITED STATES of America, Appellee,

v.

Rebecca Sue CLARK, Appellant.

No. 84–1804.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1984.

Decided Feb. 14, 1985.

James R. Vincent, Altoona, Iowa, for appellant.

Ronald M. Kayser, Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Rebecca Sue Clark was convicted in a jury trial of willfully and knowingly conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; knowingly and willfully distributing three ounces of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2; and unlawfully carrying a firearm during her commission of the offense of conspiracy to distribute cocaine, in violation of 18 U.S.C. § 924(c)(2). On appeal she claims that the convictions should be reversed because the district court [1] failed to suppress improperly seized evidence. We reject her claim and affirm the convictions.

Beginning in late December 1983, Special Agent Kenneth Carter of the Drug Enforcement Administration (DEA) negotiated with defendant's husband and co-defendant Lonnie Wayne Clark, for the purchase of cocaine. After making one such purchase, Agent Carter received a phone call from Lonnie Clark on January 24, 1984 in which Clark told Carter he could get between four to eight ounces of cocaine, that his drug source was en route, and that he would call the next morning with more details. The next day Agent Carter and Clark arranged a meeting at 1702 Sixth Avenue in Des Moines to transact a sale of three ounces of cocaine. Agent Carter then informed several DEA agents of the meeting and that he would need help. Special Agents Thornton and Overbaugh went to the area to conduct surveillance, spotted Clark's car, and stayed within one-half block of Clark's car at all times. When Agent Carter arrived, he saw Lonnie Clark, Rebecca Clark, and their child in Clark's car beside a drive-up phone booth facing Sixth Avenue. Agent Carter parked his car next to Clark, and Clark got in Carter's car. Clark then handed Agent Carter the cocaine in exchange for $6,300 in hundred-dollar bills with recorded serial numbers.

After this transaction, Clark left Agent Carter's vehicle, drove his own car to a nearby parking lot, and got in a white car with Illinois license plates, staying there for about ten minutes. Clark then entered his own car, and both cars started to leave the parking lot. Agent Carter drove his car in Clark's path to block his departure, while Agents Overbaugh and Thornton blocked the Illinois car. Agent Carter walked over to Clark's car, told Clark to get out, and arrested him. Three one-hundred dollar bills and a loaded .22 caliber pistol were found on Clark. Agent Carter then walked to the passenger side of Clark's car and noticed Mrs. Clark looking

---

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

down as if she were reading. He knocked on the car window, told Mrs. Clark to get out of the car, and opened her door. When Agent Carter asked Mrs. Clark whether any weapons were in the car, she replied that there were none. Agent Carter then took a purse from Mrs. Clark's lap, opened it, and found a .25 caliber Beretta semiautomatic pistol inside, as well as one of the recorded .one-hundred dollar bills. On searching the rest of the Clark car, agents found a bag of pills, a knife and a box of .22 caliber shells. Mr. and Mrs. Clark and the two occupants of the Illinois car were then arrested.

Before trial Mrs. Clark moved to suppress the items Agent Carter found in her purse, asserting that her arrest and the search of her purse were without warrant or probable cause. The district court denied the motion, finding that probable cause to arrest did exist. After the jury found her guilty on three counts, the court sentenced Mrs. Clark to six months in prison and three years on probation.

On appeal, Mrs. Clark contends that the agents did not have probable cause but only a mere suspicion to arrest her. She argues that because the agents observed no transaction involving Mrs. Clark and any of the other defendants, the only circumstance that could have led to her arrest was her presence in her husband's car before, during, and after the cocaine sale between her husband and Agent Carter. She then cites this court's decision in *United States v. Everroad*, 704 F.2d 403, 406 (8th Cir.1983), as holding that mere presence in a known or suspected criminal's car does not create probable cause to arrest.

■■■■ Law enforcement officials may make a warrantless arrest in exigent circumstances, such as when a suspect may flee or destroy evidence. *Id.* at 405. A warrantless arrest, however, must be supported by probable cause that the suspect had committed or was committing a crime. *Id.* On appeal, we must uphold the district court's finding of probable cause for the warrantless arrest unless it was clearly erroneous. *United States v. Purham*, 725

F.2d 450, 455 (8th Cir.1984); *United States v. Wentz*, 686 F.2d 653, 656 (8th Cir.1982); *United States v. McGlynn*, 671 F.2d 1140, 1143 (8th Cir.1982). Probable cause for a warrantless arrest is determined "in terms of the circumstances confronting a reasonably cautious and prudent police officer at the time of the arrest." *Id.* at 1143–44. Under this guideline, we find Mrs. Clark's contention that the agents lacked probable cause to be without merit.

Although "mere association with a known or suspected criminal, or mere presence in that person's automobile, does not create probable cause to arrest," *Everroad*, 704 F.2d at 406, the facts in this case extend far beyond those present in *Everroad*. In *Everroad*, agents observed the defendant riding with a known drug dealer in the latter's car less than an hour before an undercover agent purchased several pounds of marijuana from the drug dealer. Also, the dealer stated that he would deliver some cocaine within one-half hour; the agent knew that defendant was located less than one-half hour away from the location of the sale. We held that these circumstances alone did not constitute probable cause to arrest the defendant.

■■ In this case, however, Mrs. Clark was present in her husband's car at all times before, during, and after the drug purchase. She watched as her husband waited for Agent Carter's arrival, then got into Agent Carter's car, left, and drove over to the Illinois car, entered it, and then returned to his own car and began to leave. From these circumstances we cannot say that the district court was clearly erroneous in finding that Agent Carter had probable cause to arrest Mrs. Clark. Agent Carter could have reasonably concluded that, as a witness to her husband's suspicious behavior, Mrs. Clark was aware of the criminal nature of the transaction being conducted. *See United States v. Hillison*, 733 F.2d 692, 697 (9th Cir.1984) (in assessing probable cause based on association with persons engaging in criminal activity, an important consideration is whether the nature of the criminal activity is such that

it could not normally be carried on without the knowledge of all persons present). As well, Agent Carter could have reasonably assumed that Mrs. Clark was present in order to act as a look-out while her husband conducted the deal, or that she might be armed to provide support for her husband in the event that violence errupted. The criminal activity here was apparent. In addition, the officers here had a right to protect themselves from the use of any firearms that might be available. *See Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). *See also United States v. Oates,* 560 F.2d 45, 62 (2d Cir.1977) (it is common knowledge among drug enforcement personnel that narcotics dealers are likely to carry firearms); *United States v. Vigo,* 487 F.2d 295, 298 (2d Cir.1973) (search of defendant's purse upheld after search of companion, a suspected drug dealer, turned up a loaded concealed gun; the court stated, "a lady's handbag is the most likely place for a woman similarly to conceal a weapon"); *United States v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir.1971) (after suspect was arrested in his car, police searched the purse of his wife, who was also in the car; the court upheld that search stating, "It is inconceivable that a peace officer effecting a lawful arrest of an occupant of a vehicle must expose himself to a shot in the back from defendant's associate because he cannot, on the spot, make the nice distinction between whether the other is a companion in crime or a social acquaintance").

■ Because the district court's finding of probable cause was not clearly erroneous, the court did not err in denying Mrs. Clark's motion to suppress. Therefore the evidence presented against Mrs. Clark at trial was properly admitted, and her conviction is affirmed.